We feel strongly that both the California Court of Appeals and the District Court in this matter ruled incorrectly, and we feel that it is contrary to and an unreasonable application of established federal law. What is that federal law that we're talking about, Stogner v. California? The entire, I think, or the strongest argument in my brief, and that which I would like to argue about, is the Stogner issue. It was clearly established law. I think that, therefore, this Court can review it. And the statute under 883d in the state of California was clearly and unambiguously eviscerated by Stogner v. California for pre-1988 cases. However, we believe it goes further, that Stogner stands for the position that a statute of limitations cannot be revived once it is dead. I think the case law is very clear on that, and the briefs indicate that. It cannot be revived. Was your client still subject to being prosecuted when the California law was passed? When it was enacted, yes. That's different from the Stogner cases, right? It is, yes, because Stogner has long since passed. However — Stogner sort of made it retroactive. Right. I believe, and our argument is, that even though the enactment happened while Mr. You cannot extend it. The state of California couldn't change it from a 10-year statute to a forever statute. They did, and they can. They extended it from 6 years to 10 years, and I believe that passed in 2001. We didn't talk about that. That wasn't brought up in the briefs. But under the sexual abuse of minors, it is now a 10-year statute. So extensions are okay. But the only thing that makes 803G an extension statute is the California Court of Appeals and Judge Breyer in the district court saying this is an extension statute. By its very nature, the statute must die in order for 803G to even come up. It is the only way. It has to. So under 803G, it says once 801 or 800 statute of limitations has expired and X, Y, and Z, then we can use this statute of limitations. It has to be dead at some point. Now, the California Court of Appeals talks about 803G and the idea that it's a flexible statute of limitations. And then Judge Breyer talks about how it's the flexible statute of limitations is a seamless transition into basically what is legal. However, I don't think you can have a flexible, revivable statute of limitations, nor can you have a seamless transition into this new statute of limitations area. Under your theory, the statute's really void because it would apply in all cases this way. Yes. And, in fact, Justice Breyer in Stockman talks about how the dissent, and I don't have the quotations, and I didn't put it in the article, but in a portion of it, Justice Breyer says the dissent opinion seems to say that we could just provide a new statute at any time. And the idea that there is no, there's a seamless transition, that the flexible statute of limitations now exists, is the tip of the argument. There is, in fact, if you want to use the same type of phraseology, there's a chasm that happens because 801 or 800, that opinion dies and then it has to be revived. So, how is it revived? The only way that it can be revived is by a complaint. But you can end up with some very absurd examples or absurd ideas that show this Court, I believe, that clearly it is a revival statute, not an extension statute. What are some of the examples? Mr. Renderis' case. His crimes allegedly ceased in September of 1994. The statute of limitations at that time was six years. So, in September of 2000, Mr. Renderis is now free from the statute of limitations that had been previously bygone, and he's not been charged with anything else. There is, nothing has been revived. So, December of 2000, Mr. Renderis somehow, this is a fiction, of course, but a videotape is found that shows that Mr. Renderis had molested the victim, in this case, Ryan. The videotape is then taken to the prosecutor. The prosecutor tries to prosecute Mr. Renderis. Mr. Renderis either is convicted by pleading, because he thinks that the videotape is urgent, or he actually goes to trial and gets convicted. And this is right in December of 2000. There is no statute of limitations. There, I mean, there is no way that Mr. Renderis can be prosecuted. If he was convicted in December of 2000, because he received a hard piece of evidence of a molestation that occurred in 1994, that conviction would have to be set aside, because there would be no authority under which to prosecute him. There would be no statute, because Ryan could never come forward and revive the statute out of oblivion. Another ridiculous result could be that a person who the statute under 800 or 801 is fined. That person then proceeds to pick up another type of case, I don't know, a drunk driver. They testify on the stand, and some savvy prosecutor stands up and says, by the way, have you ever committed another crime? The person stops and says, well, I'm not sure. And Stagner discusses this. The Fifth Amendment privilege doesn't apply once the statute of limitations has expired. So that person would then be, could not assert the Fifth Amendment privilege and say, I'm not going to answer whether or not I've committed any other crimes. They would have to say if they feel superior to the Fifth Amendment privilege. Well, actually, I molested somebody back in 1994, but the statute of limitations has expired, so I'm okay, and I can't take the Fifth. That's an absurd end of the argument that both the California Court of Appeals and the district court goes for. But in neither of those cases could California prosecute Mr. Renderos. If California comes up with a videotape in 2001, in the seventh year, there's no way for them to revive that, and that works to your client's benefit. So there's nothing irrational or silly about that, not from your client's perspective. Right. The statute is only designed to protect repressed memories of complained children, and it simply allows for them, when they've recovered those memories, to come in and raise a new claim. Well, but — Your client is protected in a broad variety of circumstances. But that, I think, still is an affront to the ex post facto rules. The idea that a person—one of the harms of ex post facto rules, and one of the quotations from 1874 is that you don't want to be— have cases come out of oblivion at the caprice of the prince. Well, instead of having the caprice of the prince, we now have the caprice of a potential complainant. No, but that's true of a lot of criminal prosecutions. California could have just simply said, okay, look, we've decided to extend these things for 30 years, and your client would have no complaint, including the finding of a videotape. Right. So he's actually better off under the current law, theoretically, than he would be if California had said halfway through, three years after this incident in 1997, let's just extend all child molestation cases, the statute of limitations, to 30 years. Because your client then is cooked if they find a videotape, which he's not under the current law. So he's a lot worse off under—you've got a—you now have a consistent argument, but your client's a whole lot worse off for the consistency. I understand that. But I think that the revival statute is an affront to the Constitution in a different way than a 30-year. It's that the person who wants to make an allegation against whoever can do it whenever. And that is— But that would also be true under a 30-year statute, wouldn't it? Up until the 30th year, you are stuck at the whim of a complaining witness. But if you have an ending, if you have an ending, there has to be meaning to the ending. The idea that 800, 801, and 803G can all have two flexible statutes of limitation is not constitutional. If you have one ending, then there shouldn't be a way to pull out the defibrillator and facilitate the case. Well, I agree that it may be convenient from your client's perspective to have a simple end point here, but I'm still trying to figure out why it's unconstitutional. The revival of a statute of limitation is, under the case law, as always, is an affront to the ex post facto rule. Is this law, then, the affront that you've described, is that an affront only to people who are in Rendero's situation, or is it an affront to somebody who commits a crime today and several years from now has a complaining witness who comes in well after the expiration of the ordinary statute of limitation and says, I've had a repressed memory and now I recall clearly what happened? I am saying that it is an affront for everyone. I am saying that. And I don't know if my briefs are quite—my oral argument may be a little further than some of the briefs, but it is essentially—yes, it would be an affront. And the other absurd result would be, in 40 years, a person who is 10 right now has—her father is going to make a will, and she gets cut out of the will to get all the property, and she gets mad at Daddy because Daddy's not putting her in the will because she has a repressed memory. Oh my gosh, I remember that you molested me. And through, like in Rendero's case, a pretext called—Dad, do you remember when we took a bath together? And Dad says, oh yeah, well, I guess we took a bath together, and makes a half-baked—I don't know, a half-baked admission that they were nude together at some point. Then all of a sudden, Daddy is getting charged 40 years from now when he certainly—and that is not fair. Okay, and so it's unfair in violation of which provision of the Constitution? Ex post facto, the Eighth Amendment, due process clause? What makes that ex post facto? Because had he actually molested the child, he would have had 30 years of being able to free from prosecution. No, no, that's not ex post facto. The State could decide that, like murder, that there's no statute of limitations. And that doesn't make it ex post facto just because it has a long statute of limitations. You're right, Your Honor. You are right. So it also goes to due process. I was going to say that, and I apologize. It is a due process violation. And we have, as a society, we have statutes of limitations that mean something, that give some end to the potential consequences of criminal activity. And I think that Justice Chase talked about it in 1789 and certainly talked about it in Stagner, that when it ends, it should end. And in this case, in Mr. Renderos' case, it ended in 2000. He was then charged in 2001 that the— You're saying it ended because that's what the statute says. It has to end before this next triggering thing comes up. Exactly. And it lays there dead. And it should not be at the caprice of a complainant, not at the caprice of a prince, to be able to revive a statute. It is dead by its very own nature, and then it should never be able to be revived. The idea that it is an extension that is seamless and flexible is contrary to all of the law that we have presented. I am going to reserve the rest of my time for rebuttal. Okay. Thank you. Mr. Zwicky. May it please the Court, Greg Zwicky on behalf of the people of the State of California and the Warden of the Calpatria Prison. I will be as brief as I can here because there's much less to this case than meets the eye. A statute of limitations is an act of legislative grace. It is a policy decision made by the legislature that at some point certain crimes, not all crimes, certain crimes no longer should be prosecuted. Now, the focal point of the ex post facto clause of the Constitution is not on the actions of the district attorney or the actions of a particular victim, in this case, then eight-year-old Ryan. The focal point is on the time of the enactment by the legislature. As the Supreme Court said in Stagner, a law enacted after expiration of a previously applicable limitations period violates the ex post facto clause when it is applied to revive a previously time-barred prosecution. In other words, a prosecution where there is no legislation whatsoever that allows for the prosecution. You're saying that you admit that if the time has expired, they can't extend it further at that point. If it is expired by operation of law so that there is no way in which the prosecution can be recommenced. So you make a distinction between the time when the law is enacted and the time that it takes effect. Because she's saying that the law only takes effect after the original statute of limitations expires. So then it becomes a statute of revival as opposed to a statute of extension. So could you address that argument? Yes, Your Honor. The ex post facto clause is concerned, again, with the actions of the legislature. Here, our legislature, or the California legislature, enacted a law that became effective January 1st, 1994. Not in 2001 or 2000 after Ryan finally reported his claims. But it became effective in 1994. What about the language that says it does not come into, it does not take effect or it doesn't apply until after the statute of limitations expires? I think that's the language the opposing counsel is relying upon for an ex post facto argument. We recognize that the language may have been less than artful in terms of drafting. However, the California Court of Appeal interpreted legislative intent. Now, where the Court of Appeal actually, where a state court interprets its own laws, that state court's interpretation should be given defense. It's binding, actually. It is. Thank you. And in this case, the courts specifically said the legislature was intending to create a seamless statute of limitations, albeit one that did have some conditions on it, conditions precedent. But a statute of limitations that never expired until one year after the crime was reported to law enforcement by the victim. Otherwise, it would have frustrated the purpose of the enactment because you would have a conflict between 800, which allowed for a six-year statute of limitations, and 803, which said, okay, you can only prosecute within that one year after the victim reports it. The legislature had to do something to end that conflict or eliminate that conflict. And in this case, they did so by specifically saying, it's a seamless statute. And the legislature further said, notwithstanding any other restrictions. In other words, the legislature, the California legislature in enacting this was intending to extend the statute of limitations, not restrict it. It's pretty much a lifetime extension, isn't it? Correct, Your Honor. It's the same thing as if the legislature were to have eliminated a statute of limitations on this crime altogether, as it has done for murder. That's simply a legislative policy decision. And specifically, in Stagner itself, the very end of the opinion, the court says, and it contrasted the two. in which it found an ex post facto violation with post-1987 claims. And it said that such a law is ex post facto regarding the application to pre-1988 claims, does not prevent the state from extending time limits for the prosecution of future offenses or for prosecutions not yet time barred. In this case, the prosecution was not yet time barred. In fact, some of the acts had not even occurred at the time that the legislature extended the statute of limitations. We would ask that the court uphold the judgment of the district court and affirm the conviction. Unless there are other questions, we would submit the matter. Thank you, Mr. Zwicky. Ms. Ellis, you have a couple of minutes. Just a few comments. The concession that 803 is less than artful language avoids the very obvious thing that Stagner has said, that it is not only inartful, it is unconstitutional. Stagner conceded, does say exactly what opposing counsel said it said about time barred prosecutions. I think that that sentence, though, goes towards what the court was asking, what Judge Bybee, is that the way you say it, said, in that it goes towards non-time barred future prosecutions. The 1994 case that's sitting there and then time barred in 2000 is not what they were talking about, I believe, in Stagner. The other issue is about the state court's interpretation of being given deference. We addressed this in our reply brief, and I think it bears repeating. The idea that the state court should give deference, I mean, the idea that the district court give deference to the state court is standard law. We understand that. However, the district court should not disregard the Supreme Court on the issue that is at hand. Well, I see a little distinction. If the court of appeal is interpreting a California statute and what that statute means, then we're bound by the state court's interpretation of the statute itself. Now, then, whether or not that interpretation, in turn, is an unreasonable application of federal law is something we decide. But we can't go back and say what the California statute means, can we? No, I don't think necessarily you can, but the Supreme Court already has. And I think that that's why this case is the Supreme Court should be given deference, because the Supreme Court has already given its rulings on 803G, on the California statute. So the Supreme Court of the United States gives its ruling. Then another factual alteration comes up, and then the California court of appeals has a different nuanced argument. And then the district court, the United States district court says, well, I should give deference to the California court of appeals interpretation of its own statute. Well, that own statute has already gone up the rest of the way, and the Supreme Court has had its say on it. Well, it's a little different, because the Supreme Court was talking about a statute that addressed crimes that were not crimes when the statute was enacted, that the statute of limitations had already expired. I understand the nuance. To be more precise. I understand the nuance, and I believe you're right, that it is a different nuance. But the stronger underlying premises apply to this case as well. And I would ask that our relief be granted, unless there are any further questions. Okay. Thank you, counsel. That concludes the cases for the day. The court will stand in recess until tomorrow morning.
judges: Siler , Rawlinson, Bybee